NEW YORK COUNTY.— HON. D. C. CALVIN, SURROGATE.— February, 1878.

## GOURAUD *v.* GOURAUD.

*In the matter of the probate of the last will and testament of* TRUST FELIX GOURAUD, *deceased.*

The contestant, on the probate of a will, offered in evidence a decree in a divorce suit in favor of his mother and against the testator, which adjudged their marriage valid and gave the former a divorce, and which was made before the marriage of the executrix and legatee to the testator, in order to establish a valid marriage between his mother and the testator, and his consequent right as heir-at-law and next-of-kin. *Held*, that the executrix and legatee not being privy to that decree, it was not evidence against her for the purpose for which it was offered.

THE contestant, Andreas H. Gouraud, claimed to be the legitimate son of the decedent by a former wife,

which fact was disputed by the proponent, who denied his status as heir and next-of-kin.

After the proponent had rested, the contestant's counsel offered in evidence a judgment record in an action brought by decedent's former wife, the mother of the contestant, against the decedent for a divorce, in which the defendant therein denied the marriage, and in which a decree was entered adjudging the validity of such marriage and granting a divorce on the ground of adultery of the decedent with the proponent and legatee whom he afterwards married, and with whom he cohabited at the time of his decease. The decree is offered to show the validity of the former marriage, and the consequent legitimacy of the contestant.

The record is objected to on the ground that the adjudication of the marriage, being between other parties, is not binding upon the proponent, who was not a party thereto, either as a privy or in respect to the status of the parties.

EMOT, BURNETT & HAMMOND, *for the contestant.*

J. H. CHOATE *and* W. H. WARING, *for the proponent.*

THE SURROGATE. — The general rule is that a party is not concluded by a judgment in a prior suit or prosecution, where, from the nature or course of the proceedings, he could not avail himself of the same means of defense, or of redress, which are open to him in the second suit. (1 *Greenl. Ev.*, § 524.)

An apparent exception to this rule is decisions of other courts directly upon the personal status or

relation of the party, such as marriage, divorce, bastardy, settlement and the like, which are binding upon all, upon the ground of public policy and convenience; that the domestic and social relations of every member of the community should be clearly defined and conclusively settled.

In Burlen *v.* Shannon (3 *Gray,* 387) the plaintiff sued the husband for the board of his wife, and the defendant gave in evidence a decree in an action brought by the wife against the husband for a limited divorce for extreme cruelty, denying the divorce, and claimed that it was a bar to any consideration of the question of cruelty passed upon in that decree, when offered by the plaintiff in the action for the board. The judge ruled that the decree was not a bar, and admitted the evidence, and reserved the case for consideration by the full court.

Shaw, C. J., writing the opinion of the court, held that the court below was right, because the former decree was not between the same parties, and, as I understand the reasoning of the court, because the same question was not involved; that *extreme cruelty* was the question at issue in the case wherein the decree was entered, but that in an action brought for board of the wife, his right to recover for necessaries furnished the wife was dependent upon *her ill treatment and neglect by the husband, and his failure to provide for her, by which she was compelled to leave his house and seek the supply of her necessaries elsewhere.* In other words, neither issue was involved, and the *status* of the parties, to wit: their marriage, was conceded in both, and hence what is said by the

learned judge upon the subject of the conclusive character of a decree establishing the *status* of the parties is clearly *obiter*, and entitled to just such consideration as the soundness of his reasoning justifies.

The learned judge (p. 389) said, in defining the term *status* of the parties, that a decree divorcing husband and wife would be conclusive that they *are divorced* in all courts, as adjudging a marriage void, or valid, would be conclusive everywhere (that is as to its validity or invalidity). So if a marriage be alleged by one and denied by the other, the adjudication would be conclusive (that is, as to the fact of the marriage or non-marriage); that the legal social relation and condition of the parties as being husband and wife, or otherwise, and divorced, or otherwise, is what is understood by the term *status;* that the decree did not *establish* the relation of the husband and wife, but recognized and presupposed that relation, and no change of the *status* was affected thereby.

It is not necessary to cite authorities to establish the general principle that no person can be affected by any judicial determination, to which he was not a party or privy, and the determination of the admissibility of the record offered must depend upon the enquiry whether the legality of the former marriage, as the *status* of the parties, was established by the decree, or whether the parties objecting to its admissibility are privies as to said decree.

The sentence of divorce, or of nullity, is binding upon all tribunals in all proceedings, direct and

collateral, whether between the same parties and their privies, or between strangers; but the sentence, to have this effect, must be a direct adjudication upon the specific fact of the marriage, or its dissolution, and the finding which would be inferred argumentatively, would be attended with no such consequence. (2 *Bishop on Marriage and Divorce*, § 754.) And in the next section (id., § 755) it is said to be an adjudication about matters of matrimonial *status*, which, of necessity, binds the world, like the act of parties by which this *status* is originally assumed, and that this is the case in respect to whatever rests upon the *status* itself, but that there may be collateral rights and interests which would depend upon a different principle.

*Freeman on Judgments* (§ 313) says that a sentence of divorce necessarily affirms the marriage; no proceedings can afterwards be had to declare the marriage void *ab initio;* that the decree of divorce, as it affects the *status* of the parties, is binding on the world; but except in relation to the *status* of the parties, and subject to the usual rule that the estoppels must be mutual, it does not conclude third persons in reference to facts which it necessarily affirms or denies.

In Maine, it is held that a divorce procured by one of two spouses is no bar to an action for divorce, subsequently brought by the other. (Stilphen *v.* Houdlette, 60 *Maine*, 477.)

But inasmuch as the issue was distinctly raised in the action of divorce, whether the marriage had been contracted between the parties thereto, and the judg-

ment decided that such marriage did exist, it is claimed to be, within the language of section 754 of *Bishop on Marriage and Divorce,* a direct adjudication upon the specific fact of the marriage.

It is also claimed that the proponent is privy to the deceased, and therefore conclusively bound by the decree offered.

Bouvier defines "privies" to be persons who are parties to, or have an interest in, any action or thing, or any relation to another; that they are of several kinds — privies in blood, as heir and ancestor; privies in representation, as the executor or administrator to the deceased; privies in estate, as the relation between donor and donee, lessor and lessee; privies in respect to contracts; and privies on account of estate and contract together.

Though some of the expressions of the commentators and judges seem to be broad enough to include, under the term *status,* the adjudged relation of the parties prior to the pronouncing of the judgment, yet all the cases examined seem to me to be consistent with the more restricted signification of the word *status,* to wit: the *status* declared by the decree itself as existing, and I am the more ready to adopt this conclusion, from the fact that its broader signification might do great injustice to persons who were not parties to the proceedings in which the adjudication was made.

As an illustration, if the *status* includes the determination that the parties to the decree offered in evidence, occupied the adjudged *status* before the action was brought, to wit: that of a lawful marriage,

then the first wife lawfully married to the testator, and who was not, and could not have been, a party to an action for divorce between him and the second wife, would be estopped by the judgment therein, as well as her children by the testator, as to the validity of the second marriage, and the legitimacy of the offspring, and this without a day in court or opportunity to contest the question, and her marriage would be adjudged invalid and her offspring illegiti-. mate.

I am of the opinion that a construction of the general rule binding everybody by an adjudication as to the *status* of the parties, should be limited to the particular *status* declared to exist by the decree, and that the fact of marriage should be proved as though no judgment had been pronounced as to all. parties interested in the question, not parties or privies.

Is the proponent, legatee and executrix, privy to her late husband in respect to anything adjudicated upon by the decree offered in evidence? She would undoubtedly be privy by representation as the executrix in respect to the property disposed of by will, and privy in estate in relation to any property devised or bequeathed to her; but the principle of binding privies is, that they are bound by the determination of the particular question or right, which is settled by the judgment of the court as to the parties to whom they are privy.

As an illustration, the privies in contract would be bound by an adjudication between the parties, and the persons to whom he was privy in respect to the particular property thus affected by the decree, and

in respect of which he was privy to the contract, but his being privy by contract would extend to no other property.

So in respect to privity in estate; the executor, as devisee and legatee, would be bound by any adjudication as against her late husband, in respect of any property devised or bequeathed by the will, but in respect to no other.

Is she privy to her late husband in respect of any question of marriage decided as between her late husband and a former wife? If so, in respect to what? She succeeds to no rights of her husband, by reason of anything decided by that decree. Neither the validity of the will, nor her right as devisee or executrix, are dependent upon the validity or invalidity of the former marriage thus adjudicated. If she had been but the mistress of the deceased, it would in no way affect her rights under the will. She makes no claim as wife, but as legatee.

I am of the opinion that she is privy to her husband in no respect as to which the former decree has determined the relation between her late husband and his former wife, and not being privy, the judgment is not evidence against her or the party she represents, and that the validity of the former marriage and the legitimacy of its issue, must be shown as though no decree had been rendered, and the objection should be sustained and the record excluded.